UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CALVIN HUDSON,

                        Plaintiff,

v.                                            9:12-CV-1655 (MAD/TWD)

WAYNE HEATH; JOY ALBRIGHT,

                        Defendants.
_____

APPEARANCES:                                           OF COUNSEL:

CALVIN HUDSON, 09-A-6314
Plaintiff pro se
Greene Correctional Facility
P.O. Box 975
Coxsackie, NY 12051

HON. ERIC T. SCHNEIDERMAN                  RICHARD LOMBARDO, ESQ.
Attorney General for the State of New York
Counsel for Defendants
The Capitol
Albany, NY 12224

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT-RECOMMENDATION and ORDER

      This pro se prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Plaintiff Calvin Hudson alleges that Defendants violated his Eighth Amendment right to medical treatment. (Dkt. No. 27.) Currently pending before the Court is Defendants' motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 28.)

For the reasons that follow, I recommend that Defendants' motion be granted in part and denied in part.

**I.      BACKGROUND**

The following facts are derived from the face of the operative complaint and are accepted as true for the purposes of deciding the pending motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

On August 2, 2012, Plaintiff began experiencing progressively worsening asthma symptoms. (Dkt. No. 27 ¶¶ 7-8.) He signed up for sick call, and the following morning he was called to the infirmary. *Id*. ¶ 9. He exhibited audible wheezing, coughing, and labored breathing, and he explained to Defendant Albright, the Nurse Administrator, that his condition had continuously deteriorated through the previous day and night. *Id*. ¶¶ 10-11. He told Defendant Albright that he feared he would have an asthma attack. *Id*. ¶ 11. In response, Defendant Albright became irate, shouted obscenities, screamed that Plaintiff was faking, told him "to get the fuck out of her office," and told him to drink some water. *Id*. ¶ 12.

Plaintiff attempted an hour later to return to the infirmary, but Defendant Albright shouted that he was lying and did not have any symptoms. (Dkt. No. 27 ¶¶ 14-15.) As a result of Defendant Albright's statements, Sergeant Bagley informed Plaintiff that he could not force Defendant Albright to treat Plaintiff, and threatened to place Plaintiff in SHU if he did not return to his dorm. *Id*. ¶ 16. After Defendant Albright spoke with Sergeant Bagley, a dorm officer refused to help Plaintiff. *Id*. at ¶ 19. Plaintiff's inhaler did not relieve his symptoms, and at approximately 1:30 a.m. the following morning, after repeatedly informing his dorm officers that his condition was worsening, he had an asthma attack. *Id*. ¶¶ 18-21. Plaintiff was given

nebulizer treatment at the infirmary, but he could not inhale the medication. *Id*. ¶ 23. An ambulance was called, and Plaintiff lost consciousness, remained unconscious for the entire ambulance ride, and regained consciousness at Albany Medical Center's Intensive Care Unit. *Id*. ¶¶ 25-26.

Plaintiff was treated at Albany Medical Center for two days, then transferred to Coxsackie Regional Medical Unit and given regular nebulizer treatments for two more days. (Dkt. No. 27 ¶¶ 28-29.) He continued to experience shortness of breath, wheezing, weakness, and exhaustion for two to three weeks. *Id*. ¶ 30. He did not seek treatment because he feared that he would be denied medical treatment and placed in SHU. *Id*. ¶ 31. Plaintiff continues to feel weak, tires easily, and fears death as a result of a future, untreated asthma attack. *Id*. ¶ 32. Defendant Heath, the supervisor, was informed via grievance of these events and failed to respond. *Id*. ¶¶ 34-35.

Plaintiff filed this action on November 7, 2012. (Dkt. No. 1.) The initial complaint was dismissed, and Plaintiff was given leave to amend with regard to Eighth Amendment claims concerning the events outlined above. (Dkt. No. 22.) Plaintiff filed an amended complaint on November 4, 2013. (Dkt. No. 27.) The pending motion is a motion to dismiss the amended complaint. (Dkt. No. 28.) Plaintiff has opposed the motion. (Dkt. No. 35.)

## II. LEGAL STANDARD GOVERNING MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*,

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 679 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citation omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## III. ANALYSIS

Defendants argue that the complaint should be dismissed with regard to Defendant Heath because Plaintiff has not alleged that he was personally involved with the medical treatment.

4

(Dkt. No. 28-1 at 4-6.[1]) Defendants further argue that the complaint should be dismissed with regard to Defendant Albright because Plaintiff has failed to allege facts which support a medical indifference claim. *Id*. at 6-9. Alternatively, Defendants argue that they are protected by qualified immunity. *Id*. at 9-10.

Plaintiff concedes the claim against Defendant Heath. (Dkt. No. 35-1 at 3.) As such, I recommend that the claim against Defendant Heath be dismissed, and it will not be discussed here. However, Plaintiff argues that Defendant Albright was aware of his medical need and was deliberately indifferent. *Id*. For the reasons discussed below, I recommend that Defendants' motion be denied with regard to the claim against Defendant Albright.

  A.     **Medical Deliberate Indifference**

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual" punishments. The word "punishment" refers not only to deprivations imposed as a sanction for criminal wrongdoing, but also to deprivations suffered during imprisonment. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Punishment is "cruel and unusual" if it involves the unnecessary and wanton infliction of pain or if it is incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Id*. at 102 (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). Thus, the Eighth Amendment imposes on jail officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). In fulfilling this duty, prison officials must ensure, among other things, that inmates receive adequate medical care. *Id*. (citing *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

---

[1] References to page numbers in citations to Defendants' memorandum of law refer to the page numbers in the original document rather than to the page numbers assigned by the Court's electronic filing system.

Eighth Amendment medical claims must satisfy both an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, "the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). To satisfy the subjective component of an Eighth Amendment claim where a prisoner claims that a defendant provided inadequate medical care, he must show that the defendant acted with "deliberate indifference." *Estelle*, 429 U.S. at 105.

### 1. Objective Prong

Defendants argue that Plaintiff cannot establish the objective prong of his Eighth Amendment claim because Defendant Albright's actions were objectively reasonable, and that her delay in treatment was not sufficiently serious because Plaintiff did not need to be transported to the hospital until hours later.[2] (Dkt. No. 28-1 at 8-9.) Plaintiff argues that Defendant Albright's failure to examine him was objectively unreasonable, and that her failure directly caused the necessity of the later hospital treatment. (Dkt. No. 35-1 at 14-16.) For the reasons discussed below, I find that Plaintiff has pled sufficient facts to establish the objective prong.

Analyzing the objective element of an Eighth Amendment medical care claim requires two inquiries. "The first inquiry is whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). The word "adequate" reflects the reality that "[p]rison officials are not obligated to provide inmates with whatever care

---

[2] Defendants also cursorily argue that the claim against Defendant Albright should be dismissed because it "is well established that Nurse Administrators do not prescribe, treat or diagnose patients." (Dkt. No. 28-1 at 8.) The cases cited by Defendants are distinguishable because they arose on summary judgment where evidence showed that the individual nurse administrators were not involved in the plaintiffs' medical care. Here, at the motion to dismiss stage, the Court must accept the allegations of the operative complaint as true.

6

the inmates desire. Rather, prison officials fulfill their obligations under the Eighth Amendment when the care provided is 'reasonable.'" *Jones v. Westchester Cnty. Dep't of Corrs.*, 557 F. Supp. 2d 408, 413 (S.D.N.Y. 2008).

Here, Plaintiff is allowed to carry with him an inhaler to use as needed. (Dkt. No. 27 ¶¶ 8, 18.) When he first presented himself to Defendant Albright, he was exhibiting visible respiratory difficulty. *Id*. ¶ 10. Regardless of what "adequate medical care" would consist of, Defendant Albright did not render any treatment at all, despite being told a second time that Plaintiff was in need. *Id*. ¶¶ 15-16. Based on Defendant Albright's instructions, the dorm officer stopped listening to Plaintiff's complaints as his condition worsened throughout the day. *Id*. ¶¶ 16-19. Plaintiff has alleged facts plausibly suggesting that he was actually deprived of medical care, and the deprivation was not objectively reasonable.

The second inquiry is "whether the inadequacy in medical care is sufficiently serious. This inquiry requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin*, 467 F.3d at 280. The focus of the second inquiry depends on whether the prisoner claims to have been completely deprived of treatment or whether he claims to have received treatment that was inadequate. *Id*. If "the unreasonable medical care is a failure to provide any treatment for an inmate's medical condition, courts examine whether the inmate's medical condition is sufficiently serious." *Id*. If the claim is that treatment provided was inadequate, the second inquiry is narrower. *Id*. For example, "[w]hen the basis for a prisoner's Eighth Amendment claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather

than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation" is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original).

Here, Defendants argue that the fact that Plaintiff did not have the ultimate asthma attack until hours after Defendant Albright refused to examine him indicates that her delay was not sufficiently severe to cause him injury. (Dkt. No. 28-1 at 8.) This is a mischaracterization of Defendant Albright's conduct, as it is alleged on the face of the complaint. The complaint alleges that she did not merely "delay" in treating Plaintiff, but rather she failed to render any aid, or determine if any was necessary. (Dkt. No. 27 ¶ 12.) The complaint alleges that she refused to see Plaintiff, and she told the correctional officers that he was lying, despite never examining him. *Id*. ¶¶ 14-15. As a direct result of her allegations that Plaintiff was lying, Sergeant Bagley told Plaintiff he could not force her to treat Plaintiff. *Id*. ¶ 16. Drawing all inferences in favor of the Plaintiff, it is plausible that Defendant Albright's declaration that morning caused the dorm officer to fail to recognize or report Plaintiff's increasingly severe asthma. *Id*. ¶¶ 18-19. Therefore, Plaintiff has alleged not that his medical treatment was delayed, but that he was denied medical treatment. (Dkt. No. 35-1 at 15-16.) This Court therefore looks at whether Plaintiff's underlying medical condition, asthma, was sufficiently serious. If a prisoner is exhibiting symptoms of an oncoming asthma attack, it is a condition which is sufficiently serious for the Eighth Amendment. *See Ennis v. Davies*, No. 87 Civ. 1465 (LMM), 1990 U.S. Dist. LEXIS 10500, at *7-8, 1990 WL 121527, at *3 (S.D.N.Y. Aug. 15, 1990).[3] Thus, Plaintiff has

---

[3] The Court will provide Plaintiff with a copy of this unpublished decision in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8

alleged facts plausibly suggesting the second inquiry of the objective prong of his Eighth Amendment claim against Defendant Albright.

Even if this Defendant Albright's conduct categorized merely as a "delay," the complaint plausibly alleges that the delay itself caused serious consequences for Plaintiff. Taking the allegations in the complaint as true, by refusing to examine Plaintiff, and telling the officers supervising him that he was faking, Defendant Albright may have put Plaintiff at risk of death. Plaintiff eventually lost the ability to breathe to such an extent that he fell unconscious, and remained so for the ambulance ride from Greene Correctional Facility in Coxsackie to Albany Medical Center. (Dkt. No. 27 ¶¶ 25-26.) This Court takes judicial notice that the distance between these two locations is roughly twenty miles. Fed. R. Evid. 201. This is a strong indicator of the severity of Plaintiff's medical emergency, which resulted from the alleged lack of treatment.

Defendants also argue that "any delay in treating plaintiff for a future event did not deny him medical care." (Dkt. No. 28-1 at 9.) This argument is without merit. The complaint alleges that by the time Plaintiff received medical treatment for his increasingly severe asthma, he was so unable to breathe that he could not inhale the medication, and lost consciousness. (Dkt. No. 27 ¶¶ 23-25.) This alleged delay by Defendant Albright prevented Plaintiff from receiving *any* treatment while at the Correctional Facility, and allegedly caused the subsequent unconsciousness, hospital stay, and lasting symptoms. Therefore, Plaintiff has pled sufficient facts to satisfy the objective prong of his Eighth Amendment claim against Defendant Albright.

   2.   **Subjective Prong**

Defendants argue that Plaintiff has not alleged actual knowledge on the part of Defendant

Albright with regard to Plaintiff's danger. (Dkt. No. 28-1 at 9.) Plaintiff argues that Defendant Albright consciously chose an easier and less efficacious treatment plan. (Dkt. No. 35-1 at 15.) For the reasons discussed below, I find that Plaintiff has alleged sufficient facts to establish the subjective prong.

Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). Thus, to establish deliberate indifference, an inmate must prove that (1) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need; and (2) the medical care provider actually drew that inference. *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need. *Farmer*, 511 U.S. at 835. An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference." *Estelle*, 429 U.S. at 105-06.

Moreover, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment." *Id.* at 106. Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.*; *see also Smith*, 316 F.3d at 184 ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation."). However, malpractice that amounts to culpable recklessness constitutes deliberate

indifference. Accordingly, "a physician may be deliberately indifferent if he or she consciously chooses an easier and less efficacious treatment plan." *Chance*, 143 F.3d at 703 (quoting *Hathaway*, 99 F.3d at 553).

"Deliberate indifference is a mental state equivalent to subjective recklessness, as the term is used in criminal law . . . [and] requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280. "Prison officials may . . . introduce proof that they were not so aware, such as testimony that 'they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent.'" *Id*. at 281 (quoting *Farmer*, 511 U.S. at 837). However, at the motion to dismiss stage, there can be no such testimony, and this Court must consider the Plaintiff's complaint as true. The cases which Defendants' memorandum of law cites all apply these standards at the summary judgment stage. (Dkt. No. 28-1 at 8-9.)

Here, Defendants appear to argue that Defendant Albright was sincerely, if unreasonably, convinced that her conduct did not pose a risk of serious harm to Plaintiff. (Dkt. No. 28-1 at 9.) They further argue that Plaintiff has failed to allege actual knowledge. *Id*. However, this Court has a duty to construe a pro se plaintiff's complaint liberally. *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). Because this is a 12(b)(6) motion, Plaintiff must merely provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Iqbal*, 556 U.S. at 678 (emphasis added).

The complaint alleges sufficient facts to suggest that Defendant Albright "consciously [chose] an 'easier and less efficacious' treatment plan." *Chance*, 143 F.3d at 703 (quoting *Williams v. Vincent*, 508 F.2d 541, 544 (2d Cir. 1974)). Rather than choosing to examine

11

Plaintiff when he arrived at the infirmary with audible respiratory difficulty, she instead chose to tell him to leave and drink water, and refused to see him again to revise this treatment plan. (Dkt. No. 27-1 ¶¶ 10, 12.)

Furthermore, showing what a defendant knows is a challenging endeavor at any stage of an action. *See Rumely v. United States*, 293 F. 532, 560 (2d Cir. 1923) ("Knowledge, being a mental condition, undisclosed, cannot always be proven by direct or express testimony."). It is even more difficult at this stage, where no evidence has been obtained. Even after discovery, at the summary judgment stage, "[t]he court must be cautious in deciding a motion for summary judgment in an action that involves the state of mind of the defendant, because much will depend on the credibility of the witnesses." *Gibralter v. City of New York*, 612 F. Supp. 125, 133 (E.D.N.Y. 1985). Given the need for evidence of the Defendant's knowledge and motives in this case, granting the motion to dismiss would be unjust toward the Plaintiff, who understandably does not have access to that information. Because this Court must draw all reasonable inferences in Plaintiff's favor, I find that Plaintiff has alleged sufficient facts to show that Defendant Albright had actual knowledge of the risk of ignoring Plaintiff's symptoms and still refused to examine him. Therefore, I recommend that the Court find that the complaint states an Eighth Amendment claim against Defendant Albright.

### B. Qualified Immunity

Defendants' qualified immunity argument repeats their argument on the merits of Plaintiff's constitutional claim. (Dkt. No. 28-1 at 9-10.) Plaintiff likewise repeats his argument that Defendant Albright's actions were not reasonable. (Dkt. No. 35-1 at 17-19.) For the reasons discussed below, I recommend that the Court find that Defendant Albright is not entitled to

qualified immunity at this time.

Qualified immunity is an affirmative defense. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). An affirmative defense is normally asserted in an answer. Fed. R. Civ. P. 12(b). While a defendant may assert a qualified immunity defense on a Rule 12(b)(6) motion, "that defense faces a formidable hurdle when advanced on such a motion." *McKenna v. Wright*, 386 F.3d 432, 433 (2d Cir. 2004). This is because "the facts supporting the defense [must] appear on the face of the complaint." *Id*. at 436. The plaintiff thus benefits from all reasonable inferences against the defendant's qualified immunity defense on a Rule 12(b)(6) motion. *Id*.

Defendants in civil rights actions are entitled to qualified immunity from civil damages "unless defendant's alleged conduct, when committed, violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Thus, the qualified immunity inquiry in a prisoner civil rights case involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004) (citations omitted), *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169, n.8 (2d Cir. 2007) (citations omitted).

In determining whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, courts in this circuit consider three factors: (1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his

or her acts were unlawful. *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992). *See also Pena v. DePrisco*, 432 F.3d 98, 115 (2d Cir. 2005); *Clue v. Johnson*, 179 F.3d 57, 61 (2d Cir. 1999); *McEvoy v. Spencer,* 124 F.3d 92, 97 (2d Cir. 1997); *Shechter v. Comptroller of City of New York,* 79 F.3d 265, 271 (2d Cir. 1996); *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994); *Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993).

When a defendant invokes qualified immunity on an Eight Amendment claim for medical deliberate indifference, to establish their defense, "the defendants must show that it was 'objectively reasonable,' for them to believe that they had not acted with the requisite deliberate indifference." *McKenna*, 386 F.3d at 437 (citation omitted).

Here, Defendant Albright has not met the necessary burden to establish qualified immunity. For the first prong, case law has clearly established that "the Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin,* 467 F.3d at 279. A reasonable person would know that medical professionals in a prison must provide medical care to the inmates therein. Therefore, the right in question was defined with reasonable specificity.

For the second prong, Defendant Albright has not shown that it was objectively reasonable to refuse to examine Plaintiff. Taking Plaintiff's complaint as true, and drawing all inferences in his favor, he was audibly wheezing, coughing, and short of breath when he first arrived at the infirmary, but Defendant Albright, the medical professional responsible for inmates at that time, refused to even examine him. (Dkt. No. 27 ¶¶ 10, 12.) Because Defendant Albright

14

did not examine Plaintiff to determine the correct course of treatment, it was not objectively reasonable for her to believe she was obeying the law when she refused to treat him. Therefore, she is not entitled to qualified immunity at this stage.

It should be noted that Defendant Albright may be entitled to the defense at a later stage in the proceeding, when evidence has been submitted and the allegations in the claim may be challenged. However, for the purposes of a 12(b)(6) motion, she has not met her burden for the affirmative defense. Therefore, I recommend that the Court deny Defendants' motion to dismiss the Eighth Amendment claim against Defendant Albright.

### C. Conclusion

Because Plaintiff concedes his claim against Defendant Heath, I recommend that Defendants' motion to dismiss be granted with respect to claims against him. However, because the claims against Defendant Albright require examination of her knowledge and state of mind, dismissal is premature. I recommend that Defendants' motion be denied with respect to Defendant Albright.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 28) be **GRANTED** for claims against Defendant Heath; and it is further

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim (Dkt. No. 28) be **DENIED** for claims against Defendant Albright; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of *Ennis v. Davies*, No. 87 Civ. 1465 (LMM), 1990 U.S. Dist. LEXIS 10500, 1990 WL 121527 (S.D.N.Y. Aug. 15, 1990).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989) (per curiam)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

Dated: July 31, 2014
       Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge

**Ennis v. Davies, Not Reported in F.Supp. (1990)**

1990 WL 121527

1990 WL 121527
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Macio ENNIS, Plaintiff,
v.
Sgt. DAVIES, C.O. Sawyer, C.O. Rooney,
C.O. Schmitt, C.O. Connolly, Defendants.

No. 87 CIV. 1465 (LMM). | Aug. 15, 1990.

**Attorneys and Law Firms**

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Peter D'Apice, of counsel), for plaintiff.

New York State Department of Law, New York City (Barbara K. Hathaway, of counsel), for defendants.

**Opinion**

### MEMORANDUM AND ORDER

McKENNA, District Judge.

**\*1** Defendants have made a motion for summary judgment on the three claims brought by plaintiff, Ennis. The plaintiff's claims are for (1) excessive use of force by the defendants, five Department of Corrections Officers, (2) denial of access to his legal material, and (3) deliberate indifference to his need for medical care on the part of defendants Sawyer and Rooney.

Defendants move for summary judgment on the first claim on the ground that it is precluded by a prior determination by the New York Court of Claims. Ennis filed a claim with the New York Court of Claims on June 3, 1987 for injuries received on October 2, 1986. Ennis sought $600,000 in damages alleging that the five defendants named in this federal action beat him without provocation. The claim was heard on January 29, 1988 before Hon. Louis C. Benza, Judge of the Court of Claims. By decision dated February 9, 1988, the Court dismissed the claim, finding that "the force used by the corrections officer [sic] was reasonably necessary to control claimant" and that "said force was not excessive and, therefore, the defendant may not be held liable."

The decision of the Court of Claims is entitled to preclusive effect if the requirements of issue preclusion are met. The requirements of issue preclusion are that (1) the issue sought to be precluded is the same issue involved in the prior action; (2) there was a final determination on the merits of the issue; and (3) the party against whom issue preclusion is sought had a full and fair opportunity to litigate the point. *Davis v. Halpern,* 813 F.2d 37 (2nd Cir.1987). *See also Prime Management Co., v. Steinegger,* 904 F.2d 811 (2nd Cir.1990). Defendants assert that all three requirements are met here.

Ennis disputes that the Court of Claims decided the issue of whether four of the five defendants used excessive force. While it is true that the decision of the Court of Claims referred to the force "used by the corrections officer" and not the "corrections officers," the conduct of all the defendants was at issue before the Court of Claims. The judgment entered by the Court of Claims stated that the claim brought by Ennis that he suffered injuries due to the alleged "negligence of the State of New York, its officers, agents, servants and employees" was dismissed, clearly indicating that the issue of the alleged use of excessive force by all five of the defendants herein was thereby decided. The use of the singular "defendant" in the Court of Claims decision was appropriate since the defendant before the Court of Claims was a singular entity, the State of New York. The use of the singular "corrections officer" in the decision may have been due to the fact that only one of the five defendants testified. Indeed, plaintiff suggests that the Court of Claims decision is meant to refer to the testifying defendant, Officer Schmitt. There is, however, nothing else in the record to indicate that the Court of Claims chose to decide the liability of the State of New York for the conduct of one of its employees, but not for the other four whose misconduct had been alleged in the complaint and about whose conduct testimony was given; and there is nothing to indicate that that one defendant is Schmitt other than the fact that he testified. Thus, it is clear that the issue of the use of excessive force was resolved as regards all five defendants. Furthermore, Ennis apparently does not dispute that the Court of Claims gave a final determination of the issue; he argues merely that whatever resolution there was applies only to one of the five defendants.

**\*2** Ennis does dispute that he was afforded a full and fair opportunity to litigate his claim in the Court of Claims. Ennis explains that he was a *pro se* claimant; that the tribunal was informal and, therefore, its decision should be accorded less weight than it might otherwise have in considering collateral estoppel effect; that he had only four days notice of the hearing before the Court of Claims; that his confinement made it difficult for him to conduct sufficient discovery, such

as obtaining access to witnesses; that he was inept at the hearing; and that he was denied an opportunity to appeal the decision of the Court of Claims because he could not afford the fee for the transcript necessary to prosecute the appeal.

Plaintiff has the burden of proof that he was not given a full and fair opportunity to litigate the issue. *See Ryan v. New York Telephone Co.,* 62 N.Y.2d 494 (1984). Thus, the question remains whether or not Ennis has sustained this burden and proven that he has not had a full and fair opportunity to litigate the issue.

"The mere fact that the plaintiff proceeded *pro se* [before the Court of Claims] does not sufficiently establish that he was denied a full and fair opportunity to be heard. *Clark v. Department of Correctional Services,* 564 F.Supp. 787, 789 (S.D.N.Y.1983). Collateral estoppel is an equitable doctrine which permits 'few immutable rules,' *Gilberg v. Barbieri,* 441 N.Y.S.2d 49, 50 (1981)." *Wright v. Coughlin,* No. 85–Civ. 0624 (LBS), slip op. (S.D.N.Y. Nov. 5, 1987), *aff'd mem.,* 868 F.2d 1268 (2nd Cir.1988).

The Court finds that plaintiff had a full and fair opportunity to litigate his claim. Although plaintiff was *pro se,* he possesses a college degree, works as a prison law librarian, has filed thirty-nine lawsuits and has completed two courses in legal research. Furthermore, plaintiff had over six months from the date of filing his claim in which to prepare his case and engage in discovery. When presenting his case before the Court of Claims, plaintiff put into evidence the transcript of his disciplinary hearing, at which three inmates testified on his behalf.

Plaintiff relies on *Clark v. Department of Correctional Services,* 564 F.Supp. 787 (S.D.N.Y.1983) in which a *pro se* plaintiff was so ill-able to represent himself as to have lacked a full and fair opportunity to present his claims. However, in *Clark,* the plaintiff tried and failed to present, *inter alia,* photographic evidence, and witnesses. *Clark,* 564 F.Supp. at 789. Here, plaintiff never indicated to the Court of Claims that he wanted to call live witnesses. And as noted above, plaintiff put the transcript from his disciplinary hearing into evidence.

Accordingly, defendants' motion for summary judgment on the first claim is GRANTED as the issue of the use of excessive force by the defendants was determined in the Court of Claims and Ennis had a full and fair opportunity to litigate the issue.

Ennis has decided not to pursue his second claim for denial of access to his legal materials. Therefore, this claim is hereby DISMISSED.

**\*3** Defendants Sawyer and Rooney move for summary judgment on the third claim arguing that there is no issue of fact, with respect to Ennis' claim of a denial of medical care which rises to the level of an Eighth Amendment violation. Ennis' allegations, however, clearly reveal that there is a legitimate issue of fact involved. Ennis alleges that on November 7, 1986 he sat in a cramped cell when he began to suffer an asthma attack. He asked Corrections Officers Sawyer and Rooney for his asthma medication. Ennis alleges that the Officers refused to get the medication for him.

Although Ennis received his medication later that evening at 8:35 pm. and although medical personnel who examined Ennis at 6:50 pm and again at 8:35 pm determined that his lungs were clear, it is entirely possible that Ennis was suffering a serious asthma attack at the time when he asked for but did not receive his medicine. Defendants argue that the mere request by Ennis for his medicine did not indicate that Ennis was in serious need of it; and, therefore, the defendants could not have been deliberately indifferent to a need that they were unaware existed. This argument is not persuasive. Nothing in the record indicates that defendants Sawyer and Rooney, without reference to medical personnel, would have been able to determine that Ennis had no real need for the medication. Thus, a jury could reasonably find that Ennis' request for his asthma medication was sufficient to make the defendants aware of a serious medical need and that the defendants' response constituted deliberate indifference to this need.

Neither plaintiff nor defendants have argued the question whether the harm or pain caused Ennis by the denial of his medication rose to the level required for a finding of a violation of the Eighth Amendment's "cruel and unusual punishments" clause, [*See Cowans v. Wyrick,* 862 F.2d 697, 700 (8th Cir.1988) ], and, accordingly, the Court does not pass on it.

Because there is a genuine issue as to the material facts regarding Ennis' need for his asthma medicine, the seriousness of that need, the awareness of the need by the Corrections Officers and the appropriateness of the defendants' response to Ennis' request for the medicine, the motion for summary judgment on this claim is DENIED.

**End of Document**

© 2014 Thomson Reuters. No claim to original U.S. Government Works.

**Ennis v. Davies, Not Reported in F.Supp. (1990)**
1990 WL 121527

**WestlawNext** © 2014 Thomson Reuters. No claim to original U.S. Government Works.     3